**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ANDRES GUILLEMARD GINORIO, ET AL.,

    Plaintiffs

       v.                            CIV. NO. 03-2317 (PG)

FERMIN CONTRERAS, ET AL.,

    Defendants.

**OPINION AND ORDER**

Plaintiffs move to exclude any testimony or evidence pertaining to the December 23, 2003, Urrutia Valles, Inc. ("UVI") Order, issued by then Insurance Commissioner, co-defendant Fermin Contreras. Plaintiffs argue that defendants are attempting to get in, through the back door, what they may not present through the front door, namely: the Urrutia settlement which the Court already determined is inadmissible in trial. (Docket No. 197.)

On December 23, 2003, co-defendant Fermin Contreras signed two orders, one against Lone Star Insurance and one against UVI. Although the UVI investigation began over a $19,000 discrepancy, the Order ultimately issued – like the Lone Star Order – was extremely harsh. Thus, at about the same time as plaintiffs filed their amended complaint, UVI filed its own lawsuit, and the two cases were consolidated. Attorney Charles Cuprill represented UVI, and participated in the preliminary injunction hearing, took the deposition of Angela Rivera (the OIC examiner who conducted the UVI investigation), and was actively involved in the case until his client entered into a settlement with the defendants. UVI admitted no fault, but defendant Juarbe took the position that by settling the case, Urrutia was admitting fault. Plaintiffs argue that the point was to try and make that "admission" rub off on Lone Star.(See Docket No. 187, "Plaintiffs Emergency Motion to Compel Production of Documents at the Deposition of Dorelisse Juarbe"). On plaintiff's motion, the Court ruled that the Urrutia settlement is inadmissible in this case. (Docket No. 194.)

Federal Rule Of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Civ. No. 03-2317(PG)                                                      Page 2

See id. Under this rule, the Court has "considerable latitude in determining whether to admit or exclude evidence". Santos v. Sunrise Medical, 351 F.3d 587, 592 (1st Cir., 2003) (citing Espeaignnette v. Gene Tierney, 43 F.3d 1, 5 (1st Cir.1994)).

Having reviewed the record, the Court exclude the evidence because its probative value is substantially outweighed by the unfair prejudice it would cause and would mislead the jury.

The fact that an investigation of Urrutia took place is relevant to the case and the fact that Aurea Lopez sent Angela Rivera to "get the checks" contradicts the defendants' claim that somehow the investigation of Lone Star stemmed from the Urrutia investigation[1]. Defendants' reliance on the Urrutia Order, however, is another matter entirely. It is a way of trying to dilute the impact of what was done to plaintiffs by claiming that it was done to Urrutia as well. That is neither relevant nor probative in Lone Star's case and can only cause serious confusion and prejudice.  The jurors would wonder what happened after the order was issued and what was Urrutia's reaction. The jury may improperly compare Urrutia's response with Plaintiffs' response and make inappropriate inferences regarding Plaintiff's choice to proceed with the litigation of their case. Plaintiffs should not be placed in a position of having to explain why they proceeded with the case specially since the Court already ruled that what happened to the UVI case – the settlement – is not part of this case. Therefore, the Court hereby precludes defendants from making any reference to the Urrutia December 23, 2003 order.

**SO ORDERED.**

In San Juan, Puerto Rico, September 18, 2007.


                                             S/JUAN M. PEREZ-GIMENEZ
                                             U. S. DISTRICT JUDGE

---

[1] Plaintiffs posit that Lone Star and Guillemard were the primary targets from the beginning. Angela Rivera's draft report is relevant because when it came time to draft an Order against Lone Star, the OIC official copied, word for word, what Rivera had written. She did not look at Castro's report, or speak with him, or even know that the report existed. These two documents will only be relied on for these limited purposes.